UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY ALICIA CONNELLY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2660** |
| **VETERANS ADMINISTRATION HOSPITAL** | **SECTION: "G"(4)** |

## ORDER AND REASONS

This litigation concerns a slip-and-fall at the VA Hospital in New Orleans, Louisiana. Before the Court is Plaintiff Mary Alicia Connelly's ("Plaintiff") "Motion for Negative Presumption Based on Spoilation of Evidence."[1] After considering the pending motion, the memorandum in support, the opposition, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

On February 3, 2011, Plaintiff Mary Alicia Connelly was visiting her brother, who was a patient at the Southeast Louisiana Veterans Health Care Center in New Orleans, Louisiana.[2] According to Plaintiff, there was a foreign substance on the floor near the third floor nurse's station.[3] Plaintiff claims that she "was unaware of the existence of the foreign substance" and that "when she stepped in and/or on the foreign substance, she slipped and fell to the floor."[4] As a result of the slip-and-fall, Plaintiff alleges that she "has suffered physical pain and mental anguish."[5]

---

[1] Rec. Doc. 23.

[2] Rec. Doc. 9 at ¶ 9.

[3] *Id.* at ¶ 11.

[4] *Id.* at ¶ 13.

[5] *Id.* at ¶ 14.

On January 3, 2012, Plaintiff submitted an administrative claim for negligence to the Department of Veterans Affairs.[6] This claim was denied on August 28, 2012.[7]

On November 2, 2012, Plaintiff filed suit in this matter,[8] and on May 6, 2013, and May 15, 2013, Plaintiff filed amended complaints.[9] Plaintiff brings one claim pursuant to the Federal Tort Claims Act,[10] asserting that Defendant United States was negligent in its "failure to exercise reasonable care commensurate with the circumstances because it had actual notice of the hazardous floor condition" and in its "failure to take reasonable steps to remedy the situation."[11] Plaintiff requests $1,000,000 in damages.[12]

On January 31, 2014, Plaintiff filed the pending "Motion for Negative Presumption Based on Spoilation of Evidence"[13] On February 2, 2014, Defendant filed an opposition.[14]

## II. Parties' Arguments

### A.   Plaintiff's Arguments in Support

In the pending motion, Plaintiff "moves this Honorable Court to issue and/or sanction the defendant, and to grant a negative presumption, in favor of plaintiff, and against the defendant, based

---

[6] *Id.* at ¶ 4.

[7] *Id.*

[8] Rec. Doc. 1.

[9] Rec. Doc. 8; Rec. Doc. 9; Rec. Doc. 11.

[10] Rec. Doc. 9 at ¶¶ 15–17.

[11] *Id.* at ¶ 13.

[12] *Id.* at ¶ 17.

[13] Rec. Doc. 23.

[14] Rec. Doc. 24.

upon spoilation of evidence, and the defendant's refusal to provide video surveillance, maintenance logs, and/or work orders, which are vital to plaintiff's burden of proof."[15] According to Plaintiff, "Louisiana and Federal procedural law is replete with cases holding that the destruction of evidence and/or failure to provide evidence, results in a negative presumption."[16] Specifically, Plaintiff points to "Federal Rule 37"; citing *Black's Law Dictionary*, Plaintiff asserts that this rule defines spoilation as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence."[17]

Plaintiff claims that she is entitled to a negative presumption because Defendant has failed to produce surveillance videos, maintenance logs and work orders, and the identity of one of two nurses who assisted Plaintiff after her alleged accident. With respect to the surveillance videos, Plaintiff avers that during a deposition, floor supervisor Tyrone Bell "stated that there were at least two (2) cameras in the area [where Plaintiff fell] and they would have shown the fall of Ms. Connelly."[18] Plaintiff contends that her counsel "issued discovery to the United States Government requesting copies of all video tapes," but that "the United States stated that no such video surveillance existed."[19] Turning to maintenance logs and work orders, Plaintiff maintains:

> [P]laintiff states that a cleanup crew came to the scene directly after her accident. Plaintiff has requested copies of the maintenance logs as well as work orders,

---

[15] Rec. Doc. 23-1 at p. 1.

[16] *Id.* at p. 4 (citing *McCool v. Beauregard Mem'l Hosp.*, 2001-1670 (La. App. 3 Cir. 4/3/02); 814 So. 2d 116; *Pham v. Contico Int'l, Inc.*, 99-945 (La. App. 5 Cir. 3/22/00); 759 So. 2d 880; *Lew v. Albertson's Inc.*, 41,234 (La. App. 2 Cir. 6/28/06); 935 So. 2d 711, *writ denied* 2006-1943 (La. 11/9/06); 941 So. 2d 42; *Holloway v. Midland Risk Ins. Co.*, 36,262 (La. App. 2 Cir. 10/30/02); 832 So. 2d 1004).

[17] *Id.* at p. 4.

[18] *Id.* at p. 2.

[19] *Id.*

> concerning clean up. The United States Government has responded stating that no such maintenance logs and/or records were kept.[20]

According to Plaintiff, "[i]t is unbelievable that the United States Government does not require work orders and/or documentation on maintenance procedures requested and performed."[21] Finally, Plaintiff states that after her fall, she was assisted by two nurses.[22] Plaintiff claims that she requested the identity of these nurses but that "only Ms. Hughes, who signed an incident report has been identified."[23] Plaintiff argues that "[c]learly a brief check of employee records for the day in question would establish at lease (sic.) several nurses who may have been on duty."[24]

Accordingly, Plaintiff contends that she "is entitled to, and prays for, a finding in her favor, ordering that a negative (sic.) be issued in this matter, and that it be found by this Honorable Court that the defendant, United States Government, is liable for the damages which Ms. Connelly suffered as a result of her fall at the Dept. of Veterans Affairs/VA Hospital in New Orleans on February 3, 2011."[25]

## B. Defendant's Arguments in Opposition

In opposition, Defendant argues that Plaintiff's motion should be denied "as Plaintiff has filed such motion prematurely, discovery remains on-going, and Plaintiff has failed to establish bad

---

[20] *Id.*

[21] *Id.*

[22] *Id.* at p.3.

[23] *Id.*

[24] *Id.*

[25] *Id.* at p. 7.

faith and/or the requisite facts sufficient to merit a negative presumption."[26] According to Defendant, "[t]o date, Plaintiff has not requested a Discovery Conference, neither has Plaintiff filed a Motion to Compel pursuant to Rule 37 of the Federal Rules of Civil Procedure. Defendant's first notice of Plaintiff's concerns regarding Defendant's written discovery responses were received via Plaintiff's Motion for Negative Presumption Based on Spoilation of Evidence.[27] Further, Defendant points out that it provided Plaintiff with a copy of an incident report prepared by Nurse Colar-Hughes and offered four possible dates for her deposition; however, Defendant states that Plaintiff has not responded to the proposed dates.[28] Defendant contends that "discovery in this litigation remains on-going, and all witnesses requested by Plaintiff for deposition have been made available by Defendant, even though Plaintiff's counsel has only completed one deposition, and failed to respond to Defendant's correspondence proposed deposition dates for fact witness, Nurse Colar-Hughes."[29] "Moreover, Plaintiff's counsel has failed to provide deposition dates to Defendant for Plaintiff's fact witness, Joe Connelly, as requested."

Defendant argues that Plaintiff's motion should be denied because "Plaintiff simply fails to establish the existence of the evidence for which she seeks a negative presumption."[30] Further, Defendant avers that "to the extent the evidence sought by Plaintiff ever existed, Plaintiff has failed to establish a showing of 'bad conduct' or 'bad faith' by Defendant."[31] With respect to surveillance

---

[26] Rec. Doc. 24 at p. 2.

[27] *Id.* at p. 3.

[28] *Id.*

[29] *Id.* at pp. 3–4.

[30] *Id.* at p. 5.

[31] *Id.* at pp. 5–6.

5

footage, Defendant maintains that "Defendant thoroughly investigated whether surveillance footage of Plaintiff's accident exist[s], and determined there is no existing surveillance footage of Plaintiff's accident."[32] According to Defendant, the hospital has a thirty-day retention policy for surveillance, and "Plaintiff makes no assertion that Plaintiff, or any representative on behalf of Plaintiff, advised the VA of the possibility of litigation within thirty days following the subject accident."[33] Defendant contends that "Plaintiff is unable to demonstrate that if surveillance footage ever existed of her accident, Defendant acted in bad faith in operating in accordance with its existing 30-day rentention policy."[34]

Addressing maintenance logs and work orders, Defendant avers that it "thoroughly investigated whether any maintenance records exist in connection with Plaintiff's accident of February 3, 2011, and determined there are none."[35] Further, Defendant asserts that "[h]ousekeepers are assigned to floors or areas each day, and are responsible for all cleaning procedures necessary to address dirt, debris, spills, etc., and do not make reports or entries concerning specific actions they take during their tour."[36] "Accordingly, Plaintiff has failed to establish the existence of relevant maintenance logs from February 3, 2011, and further is unable to demonstrate that any actions taken by defendant were done so in bad faith."[37]

---

[32] *Id.* at p. 6.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at p. 7.

[37] *Id.*

Finally, with respect to the identity of the nurse who assisted Ms. Connelly, Defendant maintains that prior to filing the pending motion,

> Plaintiff asserted very broad and/or vague discovery requests for the "identities of any and all employees, as well as listing their capacity of employment, who were present at the time Ms. Connelly fell" as well as a request for "the employment files of all individuals who witnessed and/or who were present at the time in question." Defendant objected to the requests as overly broad and/or vague (in that the VA is an extremely large entity), and responded that Mr. Bell was the only known VA employee who was present and witnessed the accident that is the subject of Plaintiff's Complaint. Defendant additionally made Mr. Bell available for deposition at Plaintiff's request. Nevertheless, to the extent Plaintiff may be seeking the names of the nurses who were working on the date in question, in the area of Plaintiff's accident, Defendant hereby attaches the Declaration of James Ellis, Clinic Chief for 9G Specialty Care, which sets forth the schedule of nurses working on 9G, the location of the subject accident, on February 3, 2011.[38]

### III. Law and Analysis

**A.    Law Governing Adverse Inferences**

Federal district courts have the inherent power, as well as the authority expressly granted under the Federal Rules of Civil Procedure, to impose sanctions where warranted.[39] Rule 37(b) of the Federal Rules of Civil Procedure provides that for failure "to obey an order to provide or permit discovery," a court "may issue further just orders."[40] The actions a court may take include "directing that the matters embraced in the order or other designated facts be taken as established for purposes

---

[38] *Id.* at pp. 7–8.

[39] *See Chambers v. NASCO*, 501 U.S. 32, 46 (1991) (holding that the sanctioning scheme of the Federal Rules of Civil Procedure supplement, and do not replace, federal courts' inherent power to impose sanctions for bad-faith conduct); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1410-11 (5th Cir. 1993) (holding that a district court should first "rely on the Federal Rules of Civil Procedure as the basis for sanction" but where no sanction under the Rules is directly applicable, may "resort to [its] inherent powers to discipline"); *Lafarge Corp. v. M/V Macedonia Hellas*, No. 99-2648, 2000 WL 1586402, at *4 (E.D. La. Oct. 23, 2000) (Duval, J.) ("When parties or their attorneys engage in bad faith conduct, the Court should usually rely on the Federal Rules for sanctions. Nevertheless, it is clear that the federal courts are vested with the inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal citations and quotation marks omitted).

[40] Fed. R. Civ. P. 37(b)(2)(A).

7

of the action, as the prevailing party claims" and "rendering a default judgment against the disobedient party."[41] For a court to impose sanctions under Rule 37(b), however, there must be a violation of a discovery order issued pursuant to Rule 37(a).[42]

Apart from the Federal Rules of Civil Procedure, federal district courts have the inherent power to issue sanctions, but such power "must be exercised 'with restraint and discretion.'"[43] As the Fifth Circuit explained in *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; and implied power squeezed from the need to make the court function."[44] Under the spoliation of evidence doctrine, if evidence is intentionally destroyed, the trial court may exercise its discretion to impose sanctions on the responsible party.[45] The preferred sanction is "the well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."[46] This adverse inference rule "derives from the common sense

---

[41] Fed. R. Civ. P. 37(b)(2)(A)(i), (vi).

[42] 8B Charles Alan Wright, Arthur R. Miller, et al. *Federal Practice and Procedure* § 2282 ("When the discovery procedure is initially set in motion by the parties themselves without court order, the party seeking discovery must first obtain an order under Rule 37(a) requiring the recalcitrant party or witness to make the discovery sought; it is only a violation of this order that is punishable under Rule 37(b).").

[43] *Natural Gas Pipeline Co.*, 2 F.3d 1397, 1406 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

[44] *NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990), *quoted with approval and aff'd*, 501 U.S. 32 (1991).

[45] *See Vodusek v. Bayline Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3rd Cir. 1994) (reviewing the historical development of the spoliation of evidence doctrine).

[46] *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), *cert. denied*, 531 U.S. 1078 (2001); *see also*, *Vodusek*, 71 F.3d at 155 ("Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence"); *Schmid*, 13 F.3d at 78 (A showing that evidence had been destroyed "permitted an inference, the 'spoliation inference,' that the destroyed evidence would have been unfavorable to the position of the offending party."); *Nation-Wide Check Corp. v. Forest Hills Distribs.*, 692 F.2d 214, 217–18 (1st Cir. 1982) ("When

notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction."[47] Accordingly, to restore the prejudiced party, an adverse inference "plac[es] the risk of an erroneous judgment on the party that wrongfully created the risk."[48]

Before a court may provide for an adverse inference in light of the destruction of evidence, "the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed."[49] Such a duty "arises when the party has notice that the evidence is relevant to litigation."[50] Once a court concludes that a party was obliged to preserve the evidence, it must then consider whether the evidence was intentionally destroyed.[51] The adverse-inference sanction may not be imposed unless there is evidence of bad faith,[52] and "mere negligence is not enough" to warrant the invocation of the spoilation of evidence doctrine.[53] Finally, the court must consider the

---

the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party which has prevented production did so out of the well-founded fear that the contents would harm him.").

[47] *Kronisch*, 150 F.3d at 126.

[48] *Id.* (quoting *Nation-Wide Check*, 692 F.2d at 218).

[49] *Id.*; *see also Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 WL 765082, * 2 (E.D. La. June 12, 2000) (Vance, J.) (citing *Kronish*).

[50] *Kronisch*, 150 F.3d at 126.

[51] *Id.*

[52] *See e.g.*, *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005) ("The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'"); *Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999) ("[A]n adverse inference drawn from the destruction of records is predicated on bad conduct by the defendant."); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) ("This Court has held that such sanctions should be confined to instances of 'bad faith or willful abuse of the judicial process.'").

[53] *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (quoting *Vick v. Tex. Emp't Com'n*, 514, 734, 737 (5th Cir. 1975)).

likely contents of the destroyed evidence.[54] That is, before a court permits the drawing of an adverse inference, there must be "some showing indicating that the destroyed evidence would have been relevant to the contested issue."[55]

In this case, Plaintiff never filed a motion to compel discovery under Federal Rule of Civil Procedure 37(a). Thus, the Court cannot impose sanctions under Rule 37(b), as those sanctions must be predicated on the violation of a court order; instead, any sanction must stem from the Court's inherent power.[56]

In the pending motion, Plaintiff alleges that Defendant has not produced video surveillance, maintenance logs, or the name of one of the two nurses who assisted Plaintiff after her fall. Plaintiff contends that she "is entitled to, and prays for, a finding in her favor, ordering that a negative [inference] be issued in this matter, and that it be found by this Honorable Court that the defendant, United States Government, is liable for the damages which Ms. Connelly suffered as a result of her fall at the Dept. of Veterans Affairs/VA Hospital in New Orleans on February 3, 2011."[57] For the Court to provide a negative inference that Defendant is liable, Plaintiff must show (1) that Defendant had an obligation to preserve the evidence, (2) bad faith on the part of Defendant, and (3) the likely contents of the evidence.

---

[54] *Kronisch*, 150 F.3d at 126.

[55] *Id.* at 127.

[56] *See Bayoil, S.A. v. Polembros Shipping, Ltd.*, 196 F.R.D. 479, 482 (S.D. Tex. 2000) ("In this case, there has been no specific discovery order. Thus, there can be no sanction under Rule 37 which deals specifically with discovery orders. Any sanction in this case must stem from the Court's inherent power to issue sanctions.").

[57] Rec. Doc. 23-1 at p. 7.

**B.     Video Surveillance**

According to the declaration of Robert W. Kenyon, Chief of the Police Service at the Southeast Louisiana Veterans Health Care System in New Orleans, "surveillance cameras were installed and operational at the time of Ms. Connelly's alleged fall on February 3, 2011 on 9G of the VA hospital."[58] However, Chief Kenyon explained that these tapes would have been overridden pursuant to a 30-day retention policy.

> As part of my police duties I can declare that I have made diligent search and inquiry reference uniform offense reports, daily operations journals, and video surveillance footage associated with the incident involving Ms. Connelly on 3 February 2011. I have determined that there was no criminal case/offense report or Safety Office notifications to the Police Service regarding Ms. Connelly's alleged accident. In the absence of such a request, the surveillance footage of 3 February 2011 would have been overridden after 30 days (or 3 March 2011). The Police Standard Operating Procedure (SOP) that convers the 30-day retention period of such surveillance is attached as Exhibit A.[59]

Plaintiff has not demonstrated that as of March 3, 2011, when the tapes were overridden, Defendant was on notice that the surveillance was relevant to litigation. Plaintiff makes the conclusory assertion that "the defendant took the time to have Risk Management personnel, and its attorney, contact the plaintiff to investigate the claim. This in and of itself establish [sic.] notice of a potential suit/claim."[60]  However, Plaintiff does not provide any detail on when this contact occurred. Accordingly, Plaintiff has not shown that Defendant had an obligation to preserve the alleged evidence as of March 3, 2011.

---

[58] Rec. Doc. 24-6, Declaration of Robert W. Kenyon, dated Feb. 10, 2014 at ¶¶ 1–3.

[59] *Id.* at ¶ 4.

[60] Rec. Doc. 23-1 at p. 2.

11

Additionally, Plaintiff has not satisfied her burden of showing bad faith with respect to the alleged destruction of the video surveillance. The only evidence Plaintiff offers with respect to the video surveillance is the deposition testimony of Tyrone Bell. At his deposition, Mr. Bell merely stated that there "should be" a video camera showing the accident site.[61] Without more, Mr. Bell's testimony would, at best, be tenuous evidence of bad will. However, Mr. Bell's testimony is undermined by his later declaration. There, Mr. Bell clarified that "I can declare that I have no direct, first hand and personal knowledge whether or not surveillance cameras were in operation at the time of Mary Connelly's fall on February 3, 2011 on Floor 9G of the VA Clinic in New Orleans."[62] Mr. Bell further declared that he has "no direct and personal knowledge if there was recordation by any surveillance cameras on the 9th Floor of the VA Clinic of February 3, 2011, or how surveillance tapes are handled, processed or maintained by the VA." Accordingly, Plaintiff has not demonstrated bad faith.

**C.     Maintenance Logs**

Plaintiff has also failed to meet her burden of showing bad faith with respect to the alleged destruction of the maintenance logs and work orders. Plaintiff avers that "[i]t is unbelievable that the United States Government does not require work orders and/or documentation on maintenance procedures requested and performed," but this statement is purely conclusory.[63] Further, Defendant provides a statement from Gary N. Speyrer, Chief of the Facilities Management Service at Southeast Louisiana Veterans Health Care System, explaining:

---

[61] *Id.* at 2; Rec. Doc. 23-3, Deposition of Tyrone Bell, dated Jan. 9, 2014, at p. 28.

[62] Rec. Doc. 24-5, Declaration of Tyrone Bell, dated Feb. 6, 2014, at ¶ 3.

[63] *Id.*

> I have made diligent search and inquiry to determine any documentation (i.e. work orders, written reports, email, etc.) concerning the incident and I have determined that we do not have any such documentation. We conduct our housekeeping operations according to Medical Center Memorandum 138-8. Housekeepers are assigned to floors or areas each day, and are responsible for any and all cleaning procedures necessary to address dirt, debris, spills, etc. They do not make reports or entries concerning specific actions they take during their tour.[64]

Plaintiff has offered no evidence that maintenance logs or work orders ever existed, or that they were destroyed in bad faith.

**D.      Nurse's Identity**

Plaintiff has failed to meet her burden of showing bad faith with respect to withholding the identity of one of the two nurses who allegedly assisted Plaintiff after the accident. Plaintiff claims that she "has requested the identity of these nurses, however, only Ms. Hughes, who signed an incident report, has been identified."[65] However, Defendant informed Plaintiff that "Nurse Hughes was unable to recall what nurse, if any, was with her following the incident of which Ms. Connelly complains."[66] Further, at Plaintiff's request, Defendant proposed three possible deposition dates for Nurse Colar-Hughes, but Plaintiff never responded to Defendant's offer.[67] To the extent Plaintiff has clarified in the pending motion that she is seeking the names of all nurses working in the 9G Specialty Care Clinic on February 3, 2011, Defendant has provided a list as an attachment to its memorandum in opposition.[68]

---

[64] Rec. Doc. 24-7, Declaration of Gary N. Speyrer, dated Feb. 5, 2014, at ¶ 3.

[65] Rec. Doc. 23-1.

[66] Rec. Doc. 24-4, Letter from Sunni J. LeBeouf, Assistant United States Attorney to J. Michael Daly, Jr., Walker Willard LLP, dated Jan. 22, 2014.

[67] *Id.*; *see also* Rec. Doc. 24 at pp. 3–4.

[68] Rec. Doc. 24-8

## IV. Conclusion

Although the Court has the inherent power to sanction a party for the intentional destruction of evidence, this power must only be exercised where the offending party has an obligation to preserve the evidence and has acted in bad faith. In this case, Plaintiff has failed to make this showing with respect to the alleged destruction of video surveillance, withholding of maintenance logs, or withholding of the second nurse's identity. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion for Negative Presumption Based on Spoilation of Evidence"[69] is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this 15th day of May, 2014.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[69] Rec. Doc. 23.