UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARY ALICIA CONNELLY**                        **CIVIL ACTION**

**VERSUS**                                     **NO. 12-2660**

**VETERANS ADMINISTRATION HOSPITAL**            **SECTION: "G"(4)**

**ORDER AND REASONS**

This litigation concerns a slip-and-fall at the VA Hospital in New Orleans, Louisiana. Before the Court is Defendant the United States' "Motion for Summary Judgment."[1] After considering the pending motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant the pending motion.

Also before the Court is Plaintiff's "Motion to Continue Trial."[2] After considering the pending motion, the memorandum in support, the opposition, and the record, and further considering that the Court will grant Defendant's "Motion for Summary Judgment," the Court will deny Plaintiff's "Motion to Continue Trial."

**I. Background**

On February 3, 2011, Plaintiff Mary Alicia Connelly was visiting her brother, who was a patient at the Southeast Louisiana Veterans Health Care Center in New Orleans, Louisiana.[3] According to Plaintiff, there was a foreign substance on the floor near the third floor nurse's station.[4] Plaintiff claims that she "was unaware of the existence of the foreign substance" and that "when she

---

[1] Rec. Doc. 30.

[2] Rec. Doc. 45.

[3] Rec. Doc. 9 at ¶ 9.

[4] *Id.* at ¶ 11.

stepped in and/or on the foreign substance, she slipped and fell to the floor."[5] As a result of the slip-and-fall, Plaintiff alleges that she "has suffered physical pain and mental anguish."[6]

On January 3, 2012, Plaintiff submitted an administrative claim for negligence to the Department of Veterans Affairs.[7] This claim was denied on August 28, 2012.[8]

On November 2, 2012, Plaintiff filed suit in this matter,[9] and on May 6, 2013 and May 15, 2013, Plaintiff filed amended complaints.[10] Plaintiff brings one claim pursuant to the Federal Tort Claims Act ("FTCA"),[11] asserting that Defendant United States was negligent in its "failure to exercise reasonable care commensurate with the circumstances because it had actual notice of the hazardous floor condition" and in its "failure to take reasonable steps to remedy the situation."[12] Plaintiff requests $1,000,000 in damages.[13]

---

[5] *Id.* at ¶ 13.

[6] *Id.* at ¶ 14.

[7] *Id.* at ¶ 4.

[8] *Id.*

[9] Rec. Doc. 1.

[10] Rec. Doc. 8; Rec. Doc. 9; Rec. Doc. 11.

[11] Rec. Doc. 9 at ¶¶ 15–17.

[12] *Id.* at ¶ 13.

[13] *Id.* at ¶ 17.

On April 2, 2014, Defendant filed the pending "Motion for Summary Judgment."[14] On April 3, 2014, Plaintiff filed a memorandum in opposition.[15] With leave of the Court, Defendant filed a reply on April 15, 2014,[16] and Plaintiff filed a sur-reply on April 17, 2014.[17]

On May 7, 2014, Plaintiff filed the pending "Motion to Continue Trial."[18] Also on May 7, 2014, Defendant filed its opposition.[19]

## II. Parties' Arguments

A.   **Defendant's Motion for Summary Judgment**

   1.   **Defendant's Arguments in Support**

In its "Motion fo Summary Judgment," Defendant argues that summary judgment is appropriate because: "Defendant submits, and the record evidence supports, that at the time and place of Plaintiff's alleged fall, there was no foreign substance on the floor. Moreover, Plaintiff cannot prove her fall occurred and alleged injury results from a foreign substance on the premises, as would be required. Furthermore, Plaintiff is unable to prove actual or constructive knowledge by the Defendant of any alleged foreign substance of the floor."[20]

---

[14] Rec. Doc. 30.

[15] Rec. Doc. 32.

[16] Rec. Doc. 36.

[17] Rec. Doc. 40.

[18] Rec. Doc. 45.

[19] Rec. Doc. 46.

[20] Rec. Doc. 30-1 at pp. 1–2.

3

First, "Defendant submits, and the record evidence supports, that at the time and place of Plaintiff's alleged fall, there was no foreign substance on the floor."[21] Defendant argues that "plaintiff's only listed fact witness outside of her treating physicians, Plaintiff's brother, Mr. Connelly, who was walking with Plaintiff at the time of her fall, was unable to offer any testimony regarding an alleged foreign substance on the floor."[22] Defendant further asserts that "[t]wo VA employees, Nurse Colar-Hughes and Mr. Bell testified that they checked the floor following Plaintiff's fall, and there was nothing there."[23]

Second, according to Defendant, when a plaintiff brings a claim pursuant to the FTCA, the court applies the substantive law of the state where the alleged tortious action occurred, which in this case would be Louisiana.[24] Defendant contends that "Louisiana substantive tort law contains a burden shifting that applies only to slip-and-falls at hospitals."[25] Under this burden-shifting scheme, Defendant contends that "a plaintiff initially bears the burden of showing 'that the fall occurred and injury resulted from a foreign substance on the premises.'"[26] Once this showing is made, Defendant asserts that "'[t]he burden then shifts to the hospital to exculpate itself from liability.'"[27] According to Defendant, however, "this burden shifting is akin to strict liability, which

---

[21] *Id.* at p. 4.

[22] *Id.*

[23] *Id.*

[24] *Id.* at p. 6.

[25] *Id.*

[26] *Id.* at p. 7 (citing *Millet v. Evangeline Health Care, Inc.*, 02-1020 (La. App. 5 Cir. 1/28/03), 839 So. 2d 357, 360–61).

[27] *Id.* (quoting *Millet*, 839 So. 2d at 361).

4

the Fifth Circuit has rejected in FTCA cases."[28] Further, Defendant argues that "[u]nder the FTCA, the United States' limited waiver of sovereign immunity dictates that the United States may be liable for injuries 'caused by the negligent or wrongful act or omission of any employee of the Government.'"[29] Defendant avers that summary judgment is appropriate because "Plaintiff is unable to offer any testimony regarding any negligent or wrongful act or omission of any employee of the Government, in that Plaintiff specifically testified that she had no knowledge regarding when any alleged spill may have occurred, and whether the VA was on actual or constructive notice of any alleged spill."[30]

### 2. Plaintiff's Arguments in Opposition

In opposition, Plaintiff "asserts that there are material issues of fact, and further asserts that based upon the defendant's failure to comply with discovery and cooperate in discovery, that plaintiff has been hindered in their (sic.) ability to obtain evidence to establish negligence."[31] More specifically, Plaintiff argues that:

> Ms. Connelly states that at the time of the incident, she fell on a foreign substance which was present. Hospitals in Louisiana, as well as throughout the United States have a heighten duty of care to their patients and visitors. The area in question is clearly [a] high traffic area, and should have been inspected on a regular basis. It is for this reason, and furthermore, based on security needs, that video tapes exist. However, the defendant has failed to produce any evidence whatsoever to establish that normal cleaning procedures occurred, that maintenance was not called or did not

---

[28] *Id.* (citing *Tindall v. United States*, 901 F.2d 53, 55 n.3 (5th Cir. 1990); *Lathers v. Penguin Indus., Inc.*, 687 F.2d 69, 72 (5th Cir. 1982)).

[29] *Id.* (quoting 28 U.S.C. § 1346(b)(1)).

[30] *Id.*

[31] Rec. Doc. 32 at p. 1.

5

appear at the scene, and that the video tape which clearly existed, fails to show any foreign substance.[32]

Plaintiff also contends that maintenance logs should be available, indicating any maintenance to the area where Plaintiff fell:

> It is important to note that plaintiff, through discovery, requested copies of all logs from defendant showing times that maintenance was performed on the floor in question. Defendant has stated that no such logs exist. Plaintiff's position in this matter is that defense counsel has failed to produce documents which clearly do exist based upon standard procedure and protocol in government operated facilities.[33]

Further, Plaintiff asserts that Defendant's failure to disclose the identity of a nurse who assisted Plaintiff after her fall is grounds for denying summary judgment:

> Ms. Hughs, Mr. Bell, Mr. Connelly, and Ms. Connelly all agree that there was another nurse present at the time of the accident. Defense (sic.) counsel has requested the names of this nurse and all persons who were stationed that the desk. This information has not been supplied. Defense counsel argues that they do not have records of who was working and cannot provide this information. Ms. Hughs confirms that records should exist which would make it easy to determine who this individual was. However, defense counsel has taken no steps whatsoever to provide this information, and has failed to provide a list of any and all nurses who were assigned to the floor at the time of the incident. Of course, the video tapes would clearly show who this person was, however, no such video tapes exist. Furthermore, if another person were present, why was her testimony not taken, and why did she not prepare an incident report. All of these questions raise curious issues which create grounds to deny defendant's Motion for Summary Judgment.[34]

In support of her position that there was a substance on the floor, Plaintiff avers that Mr. Connelly testified that "sometime after the accident a maintenance crew appeared at the site and began cleaning the site and placed cones to mark the area."[35] Further, Plaintiff asserts that witnesses

---

[32] *Id.* at pp. 2–3.

[33] *Id.* at p. 2.

[34] *Id.* at pp. 4–5.

[35] *Id.* at pp. 1–2.

6

Tyrone Bell and Nurse Collar-Hughes failed to check whether her clothing was wet.[36] According to Plaintiff, Ms. Connelly herself "states that there was a foreign substance on the floor."[37] She explains that "careful inspection of the area would indicate that drink machines are easily accessible," that "a break room is down the hall and coffee was provided in this break room," and that "this is an area that is highly travelled (sic.) by patients, who often exhibit unsteady gaits and may have a propensity to spill on the floor."[38]

Plaintiff concludes arguing:

Based upon the very law cited by the defendant, genuine issues of material fact do exist, and these issues and their existence, or nonexistence, would affect the outcome of the lawsuit. It is for this reason that plaintiff filed their (sic.) Motion for Summary Judgment/Motion for Sanctions/Request for Negative Presumption. Without the information in question, it is almost impossible for the plaintiff to carry her burden of proof.[39]

### 3. Defendant's Arguments in Further Support

In reply to Plaintiff, Defendant reiterates that Plaintiff is unable to meet her burden of showing that a foreign substance was on the floor. Defendant asserts that Mr. Connelly "testified that he was with Plaintiff at the time of her fall, but did not observe a foreign substance on the floor."[40] Further, Defendant contends that Mr. Bell, who witnessed the accident, and Nurse Collar-Hughes, who assisted Plaintiff after her fall, "both testified that they inspected the site of Plaintiff's

---

[36] *Id.* at pp. 3–4.

[37] *Id.* at p. 5.

[38] *Id.*

[39] *Id.*

[40] Rec. Doc. 36 at p. 2.

7

alleged fall, and there was no foreign substance on the floor."[41] Defendant refutes Plaintiff's statement that Mr. Connelly testified to seeing a maintenance crew come to the site, saying "[i]n fact, Mr. Connelly specifically testified to the contrary, noting that he did NOT see a maintenance crew come out."[42]

Additionally, Defendant maintains that it has complied with all discovery obligations.[43]

### 4. Plaintiff's Arguments in Further Opposition

In her sur-reply, Plaintiff clarifies that "[w]hile Mr. Connelly, whose deposition has never been received from the Court Report (sic.) by plaintiff's counsel, may not have said that he did not see a cleaning crew, he commented that he clearly saw that the area was market with a cone indicating that a cleaning crew had appeared sometime between the time of the fall and the time that Mr. Connelly returned from placing the walker in his vehicle."[44]

Plaintiff also reiterates her argument that Defendant has failed to comply with its discovery obligations.[45]

---

[41] *Id.*

[42] *Id.*

[43] *See id.* at pp. 3–7. The Court's order addressing Plaintiff's "Motion for Negative Presumption Based on Spoilation of Evidence" extensively discusses the parties' positions regarding whether Defendant has fulfilled its discovery obligations. Those arguments are not restated here.

[44] Rec. Doc. 40 at p. 2.

[45] *See id.* at pp. 3–6. The Court's order addressing Plaintiff's "Motion for Negative Presumption Based on Spoilation of Evidence" extensively discusses the parties' positions regarding whether Defendant has fulfilled its discovery obligations. Those arguments are not restated here.

**B.     Plaintiff's Motion to Continue Trial**

   **1.     Plaintiff's Arguments in Support**

Plaintiff seeks a continuance of the trial currently set for June 2, 2014. In support of her motion, Plaintiff avers that "additional discovery has recently been produced by the defendant, and additional depositions are needed."[46] Specifically, Plaintiff "wishes to depose all individuals who were recently identified by the defendant as being on the premises and/or working at the time of the accident. Furthermore, defendant provided Affidavits from security personnel, as well as other employees of the VA Hospital, in support of their Motion for Summary Judgment. Plaintiff wishes to depose these individuals."[47] Plaintiff also represents that the June 2, 2014 trial date conflicts with her niece's graduation.[48]

   **2.     Defendant's Arguments in Opposition**

In opposition, Defendant asserts that "[a]dditional discovery has not recently been produced by defendant as incorrectly asserted by Plaintiff."[49] According to Defendant, "Plaintiff is seemingly referencing declarations filed into the Record at Record Doc. 24 on February 11, 2014, and issued to Plaintiff again via supplemental discovery responses on March 7, 2014. Such Declarations were made available to Plaintiff in advance of the March 31, 2014 discovery deadline in this litigation (Rec. Doc. 15), and to date, Plaintiff has never requested the depositions of the subject declarants and/or nurses identified as working on 9G on the date of Plaintiff's alleged February 3, 2011 fall."[50]

---

[46] Rec. Doc. 45-1 at p. 1.

[47] *Id.*

[48] *Id.* at p. 2.

[49] Rec. Doc. 46 at p. 1.

[50] *Id.* at pp. 1–2.

9

### III. Law and Analysis

**A.     Standard on Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[51] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[52] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[53] If the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[54]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record, which it believes demonstrate the absence of a genuine issue of material fact.[55] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[56] The nonmoving party can then defeat the motion for summary judgment by either

---

[51] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[52] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[53] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[54] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[55] *Celotex*, 477 U.S. at 323.

[56] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991).

countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[57] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[58]

**B.    Federal Tort Claims Act**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."[59] Since "[s]overeign immunity is jurisdictional in nature," the United States may only be sued with its consent.[60] Through the Federal Tort Claims Act ("FTCA"), Congress has given a limited consent for the federal government to be sued for "damages 'caused by the negligent or wrongful act or omission of any employee of the Government . . . .'"[61] "The statute provides broadly that the United States will accept liability for common torts committed by its agents to the same extent and in the same manner as liability would attach to a private individual in similar circumstances."[62] For the United States to be amenable to suit under the FTCA, the injury must have been caused "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the place where the act or omission occurred."[63] Here, the alleged acts and

---

[57] *Id.* at 1265.

[58] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[59] *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

[60] *Id.*

[61] *Artez v. United States*, 604 F.2d 417, 426 (5th Cir. 1979) (quoting 28 U.S.C. § 1346(b)).

[62] *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 374 (5th Cir. 1987) (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976)); *see also Thomas v. Calvar Corp.*, 679 F.2d 416, 418 (5th Cir. 1982) ("The FTCA permits recovery in tort against the United States only 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'") (quoting 28 U.S.C. § 1346(b)).

[63] 28 U.S.C. § 1346(b)(1); *see also Thomas*, 679 F.2d at 618.

omissions occurred in Louisiana.

C.      **Liability for Slip-and-Falls in Hospitals Under Louisiana Law**

Generally, slip-and-fall cases in Louisiana are governed by Louisiana Revised Statute § 9:2800.6, which provides:

> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.[64]

However, as numerous Louisiana courts have explained, hospitals are not considered "merchants" for the purposes of § 9:2800.6, and thus § 9:2800.6's negligence standard does not apply.[65]

While Louisiana courts agree that § 9:2800.6 does not apply, they disagree on the proper standard for evaluating slip-and-falls at hospitals. The majority approach—first articulated by the Fourth Circuit Court of Appeal of Louisiana in *Neyrey v. Touro Infirmary*, 639 So. 2d 1214, 1217 (La. App. 4 Cir. 1994), and later adopted by the First, Third, Fourth, and Fifth Circuits—establishes

---

[64] La. Rev. Stat. § 2800.6(b).

[65] *See, e.g.*, *Grinnell v. St. Francis Med. Ctr., Inc.*, 48,249 (La. App. 2 Cir. 8/21/13), – So. 3d –, 2013 WL 4451069, at *6 ("This court has previously held that a hospital is not a 'merchant' under La. R.S. 9:2800.6"); *Millet v. Evangeline Health Care, Inc.*, 02-1010 (La. App. 5 Cir. 1/28/03), 839 So. 2d 357, 360 ("The burden of proof that LSA-R.S. 9:2800.6 establishes should not have been used in this case where the accident occurred on a hospital's premises, instead of a merchant's premises."); *Neyrey v. Touro Infirmary*, 639 So. 2d 1214, 1217 (La. App. 4 Cir. 1994) ("R.S. 9:2800.6 expressly applies to 'merchants' as defined therein, and hospitals are not covered by that statute.").

a burden-shifting scheme:

> A plaintiff in a slip and fall case against a hospital must show the fall occurred and injury resulted from a foreign substance on the premises. The burden then shifts to the hospital to exculpate itself from the presumption of negligence. A hospital owes a duty to its visitors to exercise reasonable care commensurate with the particular circumstances. The hospital must show that it acted reasonably to discover and correct the dangerous condition reasonably anticipated in its business activity.[66]

Once a plaintiff has met her initial burden, a hospital may defeat the presumption of negligence by showing, for example, that it conducted regular inspections of its floors and had swift cleanup procedures in place.[67]

In *Holden v. Louisiana State University Medical Center—Shreveport*, 29,268 (La. App. 2 Cir. 2/28.97), 690 So. 2d 958, 963, the Second Circuit Court of Appeal of Louisiana rejected the burden-shifting approach, and held that a hospital "is not required to exculpate itself from a presumption of negligence raised simply by the plaintiff's showing of a fall from a foreign substance whose source is unknown."[68] In *Holden*, the court explained that prior to 1975, the "general rule" governing slip-and-fall cases "had been that the plaintiff must prove, in addition to the fall, that the

---

[66] *Neyrey*, 639 So. 2d at 1216 (internal citations omitted); *see also Terrance v. Baton Rouge Gen. Med. Ctr.*, 2010-0011 (La. App. 1 Cir. 6/11/10), 39 So. 3d 842, 844 (discussing *Neyrey*); *Millet*, 839 So. 2d at 361 ("The proper burden of proof in a claim for injuries caused by a condition in a hospital is set forth in *Neyrey v. Touro Infirmary*."); *Harkins v. Natchitoches Parish Hosp.*, 97-83 (La. App. 3 Cir. 5/7/97), 696 So. 2d 19, 21 (citing *Neyrey* for the proposition that "Ms. Harkins is required to prove that she tripped and fell and was injured because of some defect at the hospital's premises, creating a presumption of negligence on the hospital's part. If she meets this burden of proof, the hospital must exculpate itself from that presumption.").

The Court notes that although Louisiana courts have adopted burden-shifting framework described in *Neyrey*, *Neyrey*'s holding did not rely on this framework and the accompanying presumption of the negligence. Rather, the *Neyrey* court found that hospital employees had *actual notice* that a hazardous substance was on the floor. *Neyrey*, 639 So.2d at 1217 (describing the burden-shifting standard but remarking "[n]evertheless, we need not consider whether a hospital's burden of proof should be lessened to the burden now placed on a merchant because, as detailed below, the record supports a finding that Touro failed to exercise reasonable care commensurate with the circumstances.).

[67] *See Terrance*, 39 So. 3d at 846 (holding that the hospital had exculpated itself from the presumption of liability where witnesses testified to "the personal and attentive floor inspection that occurred every ten-to-fifteen minutes throughout each and every day by the hospital cafeteria supervisor and the swift cleanup procedures followed by the cafeteria employees if a spill was discovered").

[68] *Holden*, 690 So. 2d at 963.

13

dangerous condition (1) was created by the merchant's employees or (2) either (a) was actually known to the merchant's employees or (b) had existed for a sufficient length of time for the merchant to have constructive knowledge."[69] Then, in *Kavlich v. Kramer*, 315 So. 2d 282 (La. 1975), and *Gonzales v. Winn-Dixie Louisiana, Inc.*, 326 So. 2d 486 (La. 1976), "the Supreme Court [of Louisiana] required the defendant storekeeper to exculpate itself from a presumption of negligence imposed merely by the plaintiff's showing that the fall occurred because of a foreign substance on the floor."[70] Following the *Kavlich* and *Gonzales* decisions in 1975 and 1976 respectively, "the burden on the merchant to exculpate itself from the presumption of negligence was further heightened to include, in addition to evidence of adequate safety and cleanup procedures, proof that none of the merchant's employees caused the spill at issue."[71] *Holden* explained that the state legislature enacted Louisiana Revised Statute § 9:2800.6 to undo this burden-shifting scheme:

> In response to this line of jurisprudence placing the burden of proof on the defendant, the legislature enacted in 1988, and later amended in 1990, a special slip and fall statute, LSA-R.S. 9:2800.6, which is specifically applicable only to merchants. The Supreme Court addressed the new statute for the first time after its amendment in 1990, in *Welch v. Winn-Dixie, Louisiana, Inc.*, 655 So. 2d 309, 314 (La. 1995). It observed: "In 1900, the Legislature changed direction completely and enacted the current version of the statute which, according to one commentator, copies the 'traditional' rule of liability requiring actual or constructive knowledge and places the burden of proof squarely on the plaintiff."[72]

Observing that "we have not found that the Louisiana Supreme Court applied the ever-increasing post-*Kavlich* burdens upon non-merchant defendants such as [hospitals] between 1975 and 1990," the Second Circuit ruled in *Holden* that "a non-merchant such as [defendant hospital] LSUMC is not

---

[69] *Id.* at 962.

[70] *Id.* (citing *Welch v. Winn-Dixie, Louisiana, Inc.*, 655 So. 2d 309, 314 (La. 1995)).

[71] *Id.* at 963.

[72] *Id.*

14

required to exculpate itself from a presumption of negligence raised simply by the plaintiff's showing of a fall from a foreign substance."[73]

While the burden-shifting approach is the majority approach, that fact alone does not determine which standard the Court must apply. Rather, the Court must take into account unique considerations surrounding liability in the context of the FTCA. As explained above, the FTCA provides a remedy "for injury or loss of property caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[74] This remedy does not, however, open the United States to liability based on strict liability.[75] Though not specifically addressed by the Fifth Circuit, other district courts have suggested "that the FTCA does not permit suits for general premises liability to the extent that such theories resemble strict liability as opposed to 'a more focused approach that requires the courts to consider the actor whose negligence might be imputed to the government under state law."[76]

---

[73] *Id.*

[74] 28 U.S.C. § 1346(b)(1).

[75] *Artez v. United States*, 604 F.2d 417, 426–27 (5th Cir. 1979) ("The liability of the United States under the Act is limited by section 1346(b) to the 'negligent or wrongful' acts of its employees; this language has been interpreted to preclude liability of the United States based on strict liability in tort.").

[76] *Perkins v. United States*, No. 98-2636, 1999 WL 148442, at *2 (E.D. La. Oct. 24, 2008) (Sear, J.) (quoting *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992)); *see also Charles v. United States Postal Serv.*, No. 06-277, 2007 WL 925899, at *2 (E.D. La. Mar. 13, 2007) (Africk, J.) (holding that "plaintiff's complaint fails to allege negligence on the part of any specific federal employees for any specific acts of negligence, her claim is one for premises liability and, therefore, she cannot sustain her FTCA action"); *Graubarth v. United States ex rel Dept. of Interior*, No. 05-892, 2005 WL 3543763, at *4 (E.D.La. Oct. 4, 2005) (Africk, J.) (holding that, where plaintiff's complaint failed to name any specific federal employees for any specific acts of negligence, plaintiff's claim was one for premises liability and could not be sustained by the FTCA); *Centanni v. United States*, No. 03-627, 2004 WL 385057, at *2 (E.D. La. Feb.27, 2004) (Engelhardt, J.) ("The plaintiff has alleged that her injuries were caused by the negligence of the Post Office in the failure to maintain the area and to warn about the alleged dangerous condition. However, the Complaint does not allege that specific individuals were negligent in any specific manner in relation to the broken chain. Thus, it appears that the substance of Ms. Centanni's claim is one of premises liability, which fails to state a claim under the FTCA."); *Cupit v. United States*, 964 F.Supp. 1104, 1112 (W.D.La.1997) (finding that "this is not an issue that has been defined by the Fifth Circuit" and dismissing plaintiff's claims against the United States "to the extent that they are founded on general state law premises liability" but not to the extent that they are based on the negligence of specific government employees) (Little, J.).

15

Accordingly, some district courts have dismissed claims where a plaintiff fails to allege that "that *specific individuals* were negligent in any *specific* manner."[77] For example, in *Graubarth v. United States ex rel. Department of the Interior*, No. 05-892, 2005 WL 3543763 (E.D.La. Oct. 4, 2005) (Africk, J.), another court in this district dismissed plaintiff's FTCA complaint for failure to state a claim where "[p]laintiff's complaint makes no mention of any specific federal employees who may have negligently caused the injuries alleged."[78] Other district courts, however, have permitted FTCA claims for general premises liability under negligence theories.[79] In *Wiggins v. United States*, No. 08-0008, 2009 WL 2176043, at *2 (E.D. La. July 22, 2009) (Feldman, J.), for example, the plaintiff brought a claim for a slip-and-fall on a wet floor at a post office. The district court did not dismiss the action for failure to state a claim, but rather evaluated plaintiff's claim under a negligence framework: "To the extent the plaintiff asserts that the defendant acted unreasonably in failing to dry the wet floor or otherwise prevent the rainwater from creating a slick condition, her claim sounds in negligence, not strict liability."[80]

Where federal district courts have allowed premises liability claims under a negligence framework, they have required that the plaintiff show that the defendant had actual or constructive

---

[77] *Perkins*, 1999 WL 148442, at *2.

[78] *Graubarth*, 2005 WL 3543763, at *4.

[79] *Joliff v. United States*, No. 11-1150, 2012 WL 2449952, at *5 (E.D. La. June 27, 2012) (Fallon, J.) (evaluating plaintiff's claim for damages resulting from falling debris at an IRS building under a negligence framework); *Wiggins v. United States*, No. 08-0008, 2009 WL 2176043, at *2 (E.D. La. July 22, 2009) (Feldman, J.) ("To the extent the plaintiff asserts that the defendant acted unreasonably in failing to dry the wet floor or otherwise prevent the rainwater from creating a slick condition, her claim sounds in negligence, not strict liability."); *Gourgeot v. United States Postal Service*, No. 07-1621, 2008 WL 4724382, at *3 (E.D. La. Oct.24, 2008) (Berrigan, J.) (allegations attributing plaintiff's fall to the condition of the stairs outside the post office stated a claim under the FTCA); *Janice v. United States*, No. 06-922, 2008 WL 269530, at *6 (W.D. La. Jan.29, 2008) (allowing FTCA premises liability claim to proceed so long as the claim was not a strict liability claim such that it did not concern an unknown, inherent defect); *Jamison v. United States*, 491 F. Supp. 2d 608, 617 (W.D. La. 2007) (FTCA did not bar action against United States for general premises liability under Louisiana negligence theory).

[80] *Wiggins*, 2009 WL 2176043, at *3. The court ultimately granted summary judgment to the defendant, finding that the plaintiff could not establish the elements of a negligence claim. *Id.* at *6.

knowledge of the condition. As the court in *Wiggins* explained, "[t]o ignore the constructive knowledge element of [plaintiff's] negligence claim would be to impose strict liability on the defendant."[81] Similarly, in *Joliff v. United States*, No. 11-1150, 2012 WL 2449952, at *5 (E.D. La. June 27, 2012) (Fallon, J.), the court stated that "[a] critical element for establishing a premises liability and negligence claim is a showing that the defendant had actual or constructive knowledge of the condition."[82]

To summarize, Louisiana's Courts of Appeal are split on whether a plaintiff has the burden of proving that a defendant-hospital had actual or constructive notice of a condition, and the Louisiana Supreme Court has not addressed the issue. While the majority approach involves a burden-shifting scheme that only requires plaintiff to initially prove that her fall occurred and injury resulted from a foreign substance on the premises, the minority has retained the traditional rule requiring the plaintiff to prove that the hospital had actual or constructive knowledge. Given the unique considerations posed by the FTCA, the Court will adopt the minority approach and require that Plaintiff prove that Defendant had actual or constructive knowledge. Eliminating the actual or constructive knowledge requirement "would be to impose strict liability on the defendant,"[83] which the FTCA and the United States' limited waiver of sovereign immunity preclude.[84]

---

[81] *Id.* at *6.

[82] *Joliff*, 2012 WL 2449952, at *6.

[83] *Wiggins*, 2009 WL 2176043, at *6.

[84] *Artez*, 604 F.2d at 426–27 ("The liability of the United States under the Act is limited sby section 1346(b) to the "negligent or wrongful" acts of its employees; this language has been interpreted to preclude liability of the United States based on strict liability in tort.").

**D.     Analysis**

In her complaint, Plaintiff asserts that Defendant "had actual notice of the hazardous floor condition."[85] However, in opposing a motion for summary judgment, the nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[86] In this case, Plaintiff has offered no evidence to support the proposition that Defendant had actual notice. Further, in her deposition, Plaintiff admitted that she did not witness anyone report to the nurses station that there was something on the floor, and that she has no knowledge of whether anyone at the VA Hospital knew that there was something on the floor.[87]

With respect to constructive knowledge, Plaintiff has offered no indication of how large the alleged spill was, how long it had been on the floor, or whether the liquid was colored and easily visible, or transparent and difficult to see. In her opposition, Plaintiff notes that "[o]f course, she is unable to identify whether this was coffee, water, juice, or whatever,"[88] though it appears to the Court that following her fall, Plaintiff could have made some basic observations about the condition of the floor.

Plaintiff acknowledges that she "is in a quandary as to how to carry her burden of proof,"[89] but contends that Defendant's motion for summary judgment should nonetheless be denied because Defendant has failed to comply with its discovery requirements. As more fully explained in the

---

[85] Rec. Doc. 9 at ¶ 13.

[86] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas*, 136 F.3d at 458.

[87] Rec. Doc. 30-6, Deposition of Mary Alicia Connelly, dated Jan. 9, 2014, at p. 3.

[88] Rec. Doc. 32 at p. 5.

[89] *Id.*

Court's order on Plaintiff's "Motion for a Negative Presumption," Plaintiff has failed to show that Defendant has not met its discovery obligations. Defendant has explained that the security video would have been overridden after thirty days after the accident,[90] and has confirmed that there are no maintenance logs or work orders.[91] Moreover, despite Plaintiff's claims that Defendant has withheld witness names, Defendant provided a list of nurses working on 9G on February 3, 2011,[92] and has made Nurse Collar-Hughes available for deposition.[93]

Further, Plaintiff has failed to show that additional discovery is warranted. On May 7, 2014, Plaintiff filed a "Motion to Continue Trial," asserting that "additional discovery has recently been produced by the defendant, and additional depositions are needed. Plaintiff wishes to depose all individuals who were recently identified by the defendant as being on the premises and/or working at the time of the accident. Furthermore, defendant provided Affidavits from security personnel, as well as other employees of the VA Hospital, in support of their Motion for Summary Judgment. Plaintiff wishes to depose these individuals."[94] The Court notes that this "additional discovery"—including the names of security personnel and the nurses on duty—has been available to Plaintiff since February 11, 2014,[95] and during that time Plaintiff has not requested any of the depositions she now asserts are necessary.[96]

---

[90] *See* Rec. Doc. 24-6, Declaration of Robert W. Kenyon, dated Feb. 10, 2014.

[91] *See* Rec. Doc. 24-7, Declaration of Gary N. Speyrer, dated Feb. 5, 2014.

[92] *See* Rec. Doc. 24-8.

[93] *See* Rec. Doc. 24-4, Letter from Sunni J. LeBeouf, Assistant United States Attorney to J. Michael Daly, Jr., Walker Willard LLP, dated Jan. 22, 2014.

[94] Rec. Doc. 45-1 at p. 1.

[95] *See* Rec. Doc. 24 and attached exhibits.

[96] Rec. Doc. 46.

## IV. Conclusion

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[97] In opposing a motion for summary judgement, the nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[98] In this case, Plaintiff has failed to identify specific facts in the record that establishes a genuine issue regarding whether Defendant had actual or constructive knowledge of the condition of the floor. Further, Plaintiff has not demonstrated that additional discovery is warranted in this matter. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's "Motion for Summary Judgment"[99] is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's "Motion to Continue Trial" is **DENIED**.[100]

**NEW ORLEANS, LOUISIANA**, this 15th day of May, 2014.

*[signature]*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[97] Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322–23; *Little*, 37 F.3d at 1075.

[98] *See, e.g.*, *Celotex*, 477 U.S. at 325; *Ragas*, 136 F.3d at 458.

[99] Rec. Doc. 30.

[100] Rec. Doc. 46.